FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
NOV 03 2026
ERIK PALTROW
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>**PAUL JESSEN JR.**,<br>Defendant. | CRIMINAL NO. 26cr 5869 MLG<br><br>18 U.S.C. § 1951(a): Conspiracy to Commit Interference with Commerce by Extortion Under Color of Official Right. |

# INDICTMENT

The Grand Jury charges:

## Introduction

At all times relevant to this Indictment:

### New Mexico Driving While Intoxicated (DWI) Laws

1. New Mexico has a series of state laws designed to target the unlawful driving of vehicles while under the influence of alcohol or drugs. *See* New Mexico Statutes Annotated (NMSA) 1978, § 66-8-101, *et seq.* (2016). Under New Mexico state law, a person has committed DWI if they operated a vehicle while impaired to the slightest degree, *see* NMSA 1978, § 66-8-102(A) (2016), or with a blood alcohol concentration (BAC) greater than .08, *see* NMSA 1978, § 66-8-102(C). A person has committed aggravated DWI if (1) their BAC is .16 or greater, (2) they caused injury as a result of their unlawful operation of a motor vehicle, or (3) they refused to submit to blood or breath testing. *See* NMSA 1978, §§ 66-8-102(D), 66-8-107(A). (Collectively, these are referred to as DWI Offenders.)

2. DWI offenses that do not involve injury or death to another are generally misdemeanors, unless the offender has at least three prior DWI convictions (resulting in the next

DWI arrest being a state felony). *See* NMSA 1978 § 66-8-102(F)-(K). The range of imprisonment depends on an offender's prior DWI conviction history, but all DWI convictions require payment of associated court fees in addition to potential fines. Additionally, if a person is convicted of DWI, they must have an ignition interlock installed in their vehicle (or in any vehicle driven by them).

3. To initiate a state court misdemeanor DWI offense, the arresting officer either files a criminal complaint immediately following the arrest and takes the offender into custody, *see* New Mexico State Court Rules (NMRA) 7-201, or later files a criminal complaint but seeks a summons from the state court, *see id.*, *see also* NMRA 7-204. If the DWI Offender is hospitalized or otherwise unable to be taken into custody immediately following the DWI incident, the officer may later file the criminal complaint and seek a summons from the court.

4. Prior to March 2022, once the New Mexico state criminal DWI charges were initiated, all parties, including a defendant, were entitled to conduct a pretrial interview (PTI) of all witnesses, including law enforcement officers. *See* NMRA 7-504(C)(1). To arrange the PTI, the parties were required to confer and agree in good faith to arrange a date and location for the PTI. If that was unsuccessful, defense counsel could seek a subpoena from the state court for a PTI. Typically, the initial PTI would be arranged at the law enforcement office and, if the officer did not attend, defense counsel could request a subpoena for the PTI at another location, including the defense attorney's law firm. On March 24, 2022, the New Mexico State Supreme Court entered an order temporarily suspending all PTIs in cases occurring in the Bernalillo County Metropolitan Court, which included all misdemeanor DWI arrests in Bernalillo County. *See* New Mexico Supreme Court Order NO. 22-8500-016. Because of this, since March 2022, there have not been PTIs for misdemeanor DWI cases that occur in Bernalillo County.

New Mexico Motor Vehicle Division (MVD) Administrative Proceedings

5. For DWI Offenders with New Mexico driver's licenses, in addition to the criminal case, there is a separate administrative process handled by the New Mexico MVD to determine if the DWI Offender's driver's license should be revoked (the "MVD hearing"). *See* NMSA 1978, § 66-8-111. Under New Mexico state law, the officer must immediately provide the DWI Offender written notice of revocation of the DWI Offender's driver's license and of the right to an administrative hearing. *See id.* at § 66-8-111.1(A). This written notice serves as the offender's temporary license for twenty days or, if the DWI Offender requests an administrative hearing, until after the order is entered following that hearing. *See id.* at § 66-8-111.1(B). If the DWI Offender requests a hearing, an administrative hearing is held, at which the officer must appear and provide testimony that there are "reasonable grounds to believe that the person had been driving a motor vehicle within this state while under the influence of intoxicating liquor or drugs", and also that the DWI Offender was arrested, and provide the results of the DWI Offender's blood or breath tests (or explain that the DWI Offender refused such tests). *See id.* at § 66-8-112(F). Based on the officer's testimony, the MVD may suspend the DWI Offender's driver's license.

New Mexico DWI Law Enforcement

6. Multiple policing agencies share in the enforcement of DWI laws within and around the Albuquerque area including, but not limited to, the Albuquerque Police Department (APD), the New Mexico State Police (NMSP), and the Bernalillo County Sheriff's Office (BCSO). Each agency has its own internal guidelines related to officer and deputy conduct and behavior.

7. BCSO has a Code of Conduct that provides, "Personnel shall conduct themselves both on and off-duty in such a manner as to reflect most favorably on the Department." BCSO Code of Conduct 109-1(F). The Code prohibits conduct that "could bring the Office and/or individual Deputy or employee into disrepute based on actions or behaviors displayed by the employee" and that "impairs the operation or efficiency of the Office." BCSO Code of Conduct 109-1(G).

The Defendant

8. At all times material to this Indictment, the defendant, **PAUL JESSEN JR.**, was a sworn law enforcement officer with BCSO. **JESSEN** joined BCSO and became a sworn law enforcement officer in 2013. **JESSEN** was assigned to work in the DWI unit in 2016 and remained in the unit until February 2020 when he was selected as a Task Force Officer (TFO) with the Federal Bureau of Investigation's Violent Crime Task Force (VCTF). In February 2022, **JESSEN** was removed as an FBI TFO. **JESSEN** remained employed by BCSO through at least May 2024.

Count 1

Conspiracy to Interfere with Commerce by Extortion Under Color of Official Right

9. The allegations set forth in paragraphs 1 through 8 of this Indictment are realleged and incorporated herein by reference.

10. From in or about March 2018 through on or about January 18, 2024, in Bernalillo County, in the District of New Mexico, the defendant, **PAUL JESSEN JR.**, unlawfully, knowingly, and intentionally combined, conspired, confederated, agreed, and acted interdependently with other persons to commit an offense defined in 18 U.S.C. § 1951(a), specifically interference with commerce by extortion under color of official right.

The Object of the Conspiracy

11. The object of the conspiracy was for **JESSEN** and other sworn law enforcement officers (the "Conspiring Officers") to agree to act, or to fail to act, to ensure that DWI Offenders that they arrested for DWI and who retained THOMAS J. CLEAR III avoided criminal and administrative remedies related to their DWI arrests in exchange for items of value provided by CLEAR in coordination with RICARDO MENDEZ.

Manner and Means of the Extortion Conspiracy

12. The object of the conspiracy was accomplished as follows:

a. CLEAR, a lawyer, owned a criminal defense law firm located in Albuquerque, New Mexico, that specialized in DWI defense. CLEAR appeared at the criminal and administrative settings for cases that were part of the scheme and moved to dismiss the proceedings based on the Conspiring Officers' intentional failures to appear at required settings.

b. MENDEZ worked for CLEAR's law firm as an investigator and handled the day-to-day coordination of the scheme.

c. **JESSEN** was a Conspiring Officer and participated in the extortion conspiracy by agreeing to intentionally fail to appear at required criminal and administrative settings associated with the DWI-related arrest knowing that his non-appearance would allow CLEAR to move to dismiss the proceedings.

d. To execute the scheme, the co-conspirators developed a system to coordinate the scheduling of the MVD hearing and criminal settings for DWI Offenders who retained CLEAR to ensure that the Conspiring Officers, including **JESSEN**, would be able to miss the required settings, which, in turn, allowed CLEAR to use the Conspiring Officer's failure

to appear as a basis to request dismissal of the proceeding (even though CLEAR was aware that the Conspiring Officer had been paid by CLEAR and MENDEZ to not appear).

e. The DWI Offenders, both aware and unaware of the scheme, retained CLEAR as their attorney following their DWI arrests. CLEAR and/or MENDEZ consulted with the DWI Offender and strongly encouraged that the attorney retainer fee be paid in cash. When the DWI Offender paid the cash retainer, CLEAR and MENDEZ were paid cash in addition to their law firm salary. As part of the scheme, CLEAR and MENDEZ typically paid the Conspiring Officer cash in exchange for the Conspiring Officer not appearing as required on the DWI Offender's criminal and administrative settings. However, when MENDEZ offered **JESSEN** cash, **JESSEN** refused to accept the cash payment. **JESSEN** spoke with Co-Conspirator 1, a senior BCSO deputy, and expressed concerns about being offered the cash payment. After that, **JESSEN** agreed to accept items of value for his home, including a Pit Boss grill/smoker, a Sharp large screen tv, Craftsman tools with a toolbox/tool cabinet, and a generator, in exchange for not appearing as required.

f. In addition, the Conspiring Officers, including **JESSEN**, also received other benefits and things of value, including but not limited to free legal services, gift cards, hotel rooms, and other gifts. MENDEZ typically handled communications with the Conspiring Officers to negotiate payment amounts and to arrange meetings to exchange payments. However, on occasion, CLEAR paid the conspiring officers directly.

g. CLEAR also provided free or significantly discounted legal services for Conspiring Officers and their family members in exchange for their participation in the criminal scheme and to develop and maintain goodwill between the Conspiring Officers and other members of the conspiracy. In 2022, CLEAR provided **JESSEN** with free legal representation

while **JESSEN** was under investigation for criminal charges unrelated to the conspiracy described herein.

h. Once the DWI Offender retained CLEAR as their attorney, CLEAR, MENDEZ, and the Conspiring Officer, including **JESSEN**, would coordinate the Conspiring Officer's non-appearance at required settings on the state criminal case and the MVD administrative proceeding. When the Conspiring Officer failed to appear as arranged, CLEAR moved to dismiss the criminal case and the MVD proceeding. Because the Conspiring Officer was a necessary witness and did not appear as required, the case and proceeding would be dismissed. Because the state criminal charges were dismissed, the fines, fees, and interlock requirement that would otherwise have applied to the DWI conviction were not imposed. In addition, the DWI Offender's driver's license was not revoked, allowing the DWI Offender to continue to drive without restriction.

i. CLEAR and/or MENDEZ would inform DWI Offenders that, if they hired CLEAR as their attorney, they would not have to worry about the DWI arrest. At times, CLEAR and/or MENDEZ would guarantee that the DWI criminal case and MVD process would be dismissed. If the DWI Offender did not retain CLEAR as their lawyer, the Conspiring Officer typically proceeded with the DWI case as required, thereby usually securing a DWI conviction against the DWI Offender.

j. To ensure successful operation of the scheme, MENDEZ contacted persons in authority at BCSO, including Co-Conspirator 1, to ensure that participating Conspiring Officers, including **JESSEN**, would fail to appear at required settings in exchange for either cash payments or gifts and other items of value.

k. Co-conspirators' conduct in perpetuating the conspiracy affected commerce.

l. Co-conspirators frequently used coded language in their communications to avoid detection and criminal prosecution.

In violation of 18 U.S.C. § 1951(a).

FORFEITURE ALLEGATION

Count 1 of this indictment is realleged and incorporated as part of this section for the purpose of alleging forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461(c).

Upon conviction of any offense in violation of 18 U.S.C. § 1951(a), the defendant, **PAUL JESSEN JR.**, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(c) and 18 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following:

1. MONEY JUDGMENT

A sum of money representing property involved in the offense(s) set forth in the Count(s) of conviction and any property traceable to such property.

2. PERSONAL PROPERTY

a. Pit Boss Pro Series Grill, Serial No. DH727701933385

b. Sharp Black Flat Screen Television, Serial No. 65G183607H02312

c. Black Craftsman Tool Chest Model 706.116216-CMST226538K0

If any of the property described above, as a result of any act or omission of the defendant[s]:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

A TRUE BILL:

/s/

FOREPERSON OF THE GRAND JURY

Assistant United States Attorney